UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSEPH MOORE,
CDCR #BD8941,

                    Plaintiff,

      vs.

JEFF MACOMBER, CDCR, DOES 1–10,
DR. SATO,

                  Defendants.

Case No.:  3:25-cv-2980-AJB-BLM

**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (Doc. No. 3);**

**(2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b); and**

**(3) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (Doc. No. 4)**

## I.    INTRODUCTION

Plaintiff Joseph Moore ("Plaintiff" or "Moore"), a prisoner proceeding *pro se*, has filed a civil rights complaint and a motion to proceed *in forma pauperis* ("IFP"). (*See* Doc. Nos. 1; 3.) In her[1] Complaint, Moore alleges violations of her rights under the Americans

---

[1]    Because Plaintiff identifies as a transgender woman the Court will refer to Plaintiff with female pronouns in this Order. *See, e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1192 n.1 (9th Cir. 2000).

with Disabilities Act and the Rehabilitation Act. She also raises the Eighth and Fourteenth Amendments claims pursuant 42 U.S.C. § 1983. (Doc. No. 1 at 3–6.) On January 14, 2026, Plaintiff also filed a Motion for Temporary Restraining Order ("TRO"). (Doc. No 4.) As discussed below, the Court grants Plaintiff's IFP motion, dismisses the Complaint without prejudice and denies the TRO motion without prejudice as moot.

## II.   MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[2] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of her IFP Motion, Moore has provided a copy of her prison certificate and trust account statement. (*See* Doc. No. 2.) During the six months prior to filing suit,

---

[2]   Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

3:25-cv-2980-AJB-BLM

Moore had an average monthly balance of $245.81 and average monthly deposits of $235.51; and at the time she filed suit she had an available account balance of $186.00. (*Id.* at 6–7.) Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $49.16 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). Pursuant to 28 U.S.C. § 1915(b), the agency having custody of Plaintiff will forward payments to the Clerk in installment provisions until the $350 statutory fee is paid in full.

## III.    SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A.    Legal Standard

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

///

**B.    Plaintiff's Allegations**

Plaintiff is a transgender inmate confined at R.J. Donovan Correctional Facility ("RJD"). (Doc. No. 1 at 1, 3.) In her Complaint, Plaintiff alleges that after a civil suit she filed in this Court in 2022 against prison officials settled,[3] Macomber, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), "knowingly permitted the reimplementation of a housing police previously adjudicated as discriminatory and unconstitutional." (*Id.* at 3.) Moore sent Macomber an "intent to sue letter in 2022 which [Macomber] . . . ignored." (*Id.*) Macomber then "continued" enforcement of the policy regarding double-cell housing, which "is disproportionate and harms transgender inmates" like Moore by "denying them privacy, safety and dignity." (*Id.*)

On October 21, 2025, the RJD officials "attempted to" assign Moore a cellmate, despite Moore having been in a single cell for "3 years." (*Id.* at 4.) Moore states that RJD is "notorious for making excuses to take away an individual's single cell." (*Id.*) Moore further alleges that Sato, a clinical psychologist, had "direct knowledge" of her "ongoing anxiety [about] being housed in a double cell setting." (*Id.*) But despite knowing Moore suffers from "gender dysphoria," and is currently receiving gender affirming hormone treatment, Sato failed to recommend she be assigned single cell housing. (*Id.* at 5.)

Moore states that "Does 1–10," unknown "correctional officials, classification staff, custody supervisors, medical personnel . . . and mental health staff . . . participated in, authorized or failed to intervene in the October 21, 2025 attempt to assign" her a cellmate. (*Id.* at 6.) While Moore does not state she was actually assigned the potential cellmate, she

---

[3]    The Court takes judicial notice of the docket in *Moore v. Palmer, et al.*, 3:22-cv-0539-LR (S.D. Cal.). *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (stating a court "may take judicial notice of its own records in other cases"). The Court, however, will not take judicial notice of any findings of fact in the court documents, only of the existence of each document and court orders. *See Queen v. M/V Am. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.").

3:25-cv-2980-AJB-BLM

alleges she has been improperly "double cell classified." (*Id.*)

**C.    Discussion**

Moore names as Defendants: the CDCR itself and Jeff Macomber (Secretary of the CDCR), Sato, and Does 1–10 in their official capacities only. (Doc. No. 1 at 2.) Moore alleges Defendants violated her rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (*Id.* at 3–6.) She also alleges violations of the Eighth Amendment and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (*Id.*) She seeks money damages and an injunction preventing Defendants "from enforcing their egregious housing placement policy" and requiring Defendants grant her "permanent single cell status." (*Id.* at 8.)

**1.    *ADA and RA***

Plaintiff alleges Defendants violated her rights under the ADA and RA. (Doc. No. 1 at 3–4.) To state a claim under Title II of the ADA, a plaintiff must allege: "(1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) [s]he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [her] disability." *Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotations omitted).

To state a claim under Section 504 of RA, a plaintiff must allege she was: (1) an individual with a disability; (2) otherwise qualified to receive the benefit; (3) denied the benefits of the program solely by reason of her disability; and (4) the program receives federal financial assistance. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Because of the similarities between the laws and remedies available, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504 of the RA. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

First, the proper defendant to such ADA and RA claims is the public entity

3:25-cv-2980-AJB-BLM

responsible for the alleged discrimination. *United States v. Georgia*, 546 U.S. 151, 153 (2006). As such, the CDCR is a proper Defendant here. Moreover, a suit against a state official in his or her official capacity is also, in effect, a suit against the government entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff sues Macomber, Sato, and Does 1–10 in their official capacities only, her ADA and RA claims against them are proper. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187–88 (9th Cir. 2003).

Moore, however, fails to state an ADA or RA claim. While the Court presumes for purposes of initial screening that Moore's gender dysmorphia is a qualifying disability,[4] she does not allege any facts to support her claim that Defendants denied her a single cell "*by reason of* [her] disability." *See Guinn*, 502 F.3d at 1060 (emphasis added). Indeed, Plaintiff does not even allege she has been given a cellmate. Instead, she states only that her requests for a "permanent" single cell classification have been denied and that on one occasion, officials attempted to assign her a specific cellmate, but ultimately did not. (*See* Doc. No. 1 at 4.) And Moore makes only a broad allegation that the "double-cell policy is disproportionate and harms transgender inmates by denying them privacy, safety and dignity." (*Id.* at 3.) Such generalized allegations are insufficient to state an ADA or RA claim. *See, e.g.*, *Regal v. Cnty. of Santa Clara*, Case No. 22-cv-04321-BLF, 2023 WL 2266135, at *7 (N.D. Cal. Feb. 27, 2023) (dismissing ADA and RA claims where the plaintiff failed to allege facts to show services were denied "because of" the plaintiff's

---

[4]    The statutory definition of disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(A). But, pursuant to § 12211, "the term 'disability shall not include . . . transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders[.]'" 42 U.S.C. § 12211(b)(1). While this Court is unaware of any controlling law in the Ninth Circuit on this issue, other courts have found gender dysphoria to be a qualifying disability. *See, e.g., Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), cert. denied, 143 S. Ct. 2414 (2023) (holding that the plaintiff "has plausibly alleged that gender dysphoria does not fall within the ADA's exclusion for 'gender identity disorders not resulting from physical impairments.'"); *see also Doe v. Horne*, No. 23-cv-00185-TUC-JGZ, 2024 WL 3091984, at *4 (D. Ariz. June 21, 2024) (finding that gender dysphoria qualifies as a disability under the ADA and RA).

3:25-cv-2980-AJB-BLM

disability); *Turner v. Ralkey*, No. 3:20-cv-5472-TL-DWC, 2022 WL 18460747, at \*18 (W.D. Wash. Apr. 26, 2022) (dismissing ADA and RA claims when transgender Plaintiff failed to meet her burden to establish defendants' decisions regarding her housing were "by reason of" her gender dysphoria).

Accordingly, the Court **DISMISSES** Plaintiff's ADA and RA claims as to all Defendants **without prejudice** for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 2.   *42 U.S.C. § 1983*

Moore also brings claims pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at 3–6.) Specifically, she alleges that Defendants violated her Eighth Amendment and Fourteenth Amendment rights by a "trying to house [her] with another inmate." (*Id.* at 4.) To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### a.   Sovereign Immunity

As noted above, Moore sues the CDCR and Defendants Macomber, Sato and Does 1–10 in their official capacities only. "Claims under § 1983 are limited by the scope of the Eleventh Amendment." *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

First, the CDCR is not a proper defendant as to Moore's § 1983 claims. The Eleventh Amendment prohibits § 1983 suits against a state or its agencies in federal court unless the State waives its immunity. *Will*, 491 U.S. at 70. "California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009). Accordingly, the CDCR, as an agency of the State, is an improper Defendant as to Plaintiff's § 1983 claims, whether sued for money damages or for injunctive relief. *See Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("In the absence of a waiver by the state or a valid congressional

7

3:25-cv-2980-AJB-BLM

override, under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.").

Next, with respect to the state officials sued in their official capacities, Macomber, Sato, and Does 1–10,[5] the analysis is slightly different. Generally, because "a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself," state officials sued in their official capacity are generally entitled to immunity in a § 1983 action. *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007) There is, however, an important exception. *Id*. at 825. "When sued for prospective injunctive relief, a state official in his official capacity is considered a 'person' for § 1983 purposes," and the Eleventh Amendment will not bar such relief. *Id*. Accordingly, a suit for prospective injunctive relief against a state employee in his or her official capacity may be cognizable when properly pled. *See Hason v. Med. Bd. of Calif.*, 279 F.3d 1167, 1171 (9th Cir. 2002); *Will*, 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

To plead a cognizable official-capacity claim for prospective injunctive relief against an official, Moore must "identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). In addition, Moore must also allege facts to show the specific state official sued for prospective injunctive relief has "some direct connection with the enforcement of the [allegedly unconstitutional] act." *L.A. Cnty. Bar Ass'n v. March Fong Eu*, 979 F.2d 697,

---

[5] The Court notes that while the use of fictitiously named "Doe" defendants is generally not favored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), amendment is allowed to substitute true names for fictitiously named defendants, *Merritt v. Cnty. of L.A.*, 875 F.2d 765, 768 (9th Cir. 1989). Here, however, Moore has failed to make any specific allegations against any separately identified Doe Defendant. (*See* Doc. No. 1 at 6.) If Plaintiff wants to state claims against unknown defendants, she must identify them individually (i.e. Doe 1, Doe 2, etc.) and specify what each unknown individual did. She "must allege sufficient facts to show how each doe defendant individually violated [her] constitutional rights. If [s]he does so, [s]he may be given leave to obtain the names of doe defendants during discovery and seek leave to amend to name those defendants." *Finefeuiaki v. Maui Police Dep't*, No. 18-CV-00325-JAO-KSC, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)).

3:25-cv-2980-AJB-BLM

704 (9th Cir. 1992) (alteration in original; internal quotation marks omitted); *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (noting that official capacity claims require that a plaintiff demonstrate that there is a causal connection between the defendant's official duties and any injury suffered by the plaintiff, and that there is a direct connection between the official and the challenged policy). "[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* Furthermore, for the "prospective injunctive relief" exception to Eleventh Amendment immunity to apply, the plaintiff must establish a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 73 (1985) (stating relief barred in suit for injunctive relief against state official where there is "no claimed continuing violation of federal law").

Here, as to Defendant Macomber, Moore makes only a conclusory allegation that he "permitted the reimplementation of a housing policy previously adjudicated as discriminatory and unconstitutional." (Doc. No.1 at 3.) But Moore does not elaborate on what this "housing policy" entails or identify what specifically about it is "unconstitutional." Nor does she explain when and to what extent such a "policy" was previously "adjudicated" to be "unconstitutional."[6] (*See id.*) Thus, even if Macomber, as CDCR Secretary, could presumably respond to Moore's request for injunctive relief, Moore has not stated a plausible claim for such relief because she has not adequately identified the policy she alleges is unconstitutional. *See Hartman*, 707 F.3d at 1127.

As to Defendants Sato and Does 1–10, the Complaint contains no specific allegations suggesting they are state officials with the authority to enforce or prohibit the policy by which cellmate classifications are made at RJD specifically, or the CDCR more

---

[6] Moore makes several vague references to the prior civil suit filed in this Court in *Moore v. Palmer, et al.*, 3:22-cv-0539-JLS-LR. Review of the docket in that case indicates it was voluntarily dismissed on May 11, 2023 without any final ruling on the merits of Moore's claims, after a settlement was reached. *Id.*, Doc. Nos. 47, 49. In her instant Complaint, Moore states she received a monetary settlement in 22-cv-0539-JLS-LR, but no injunctive relief. (Doc. No. 1 at 7.)

3:25-cv-2980-AJB-BLM

generally. Thus, she has not stated a claim for prospective relief against Sato or Does 1–10.

In addition, Moore fails to adequately allege an ongoing constitutional violation. While Plaintiff argues she should be given a "permanent" single cell classification, she concedes she has been housed in a single cell for the past three years and she makes no allegation she has *actually* been given a cellmate. (*See* Doc. No. 1 at 4.) On the one occasion Moore alleges RJD officials attempted to assign her a cellmate, it did not go forward. (*Id.*) Thus, she alleges no constitutional violation, much less an ongoing one. *Green*, 474 U.S. at 73; *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (stating liability cannot be predicated on isolated incidents; it must be founded upon practices of sufficient duration, frequency, and consistency).

Therefore, because Plaintiff has sued only the CDCR and Defendants Macomber, Sato, and Does #1–10 in their official capacities only, she is barred from seeking money damages by sovereign immunity and has also failed to state a plausible claim for prospective injunctive relief as to any individual Defendant in their official capacity. Accordingly, the Court **DISMISSES** Plaintiff's Eighth Amendment and Fourteenth Amendment claims pursuant to 24 U.S.C. § 1983 **without prejudice** for failure to state a claim as to any Defendant and for seeking damages from Defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678; *Will*, 491 U.S. at 70.

**D.     Leave to Amend**

Given Plaintiff's pro se status, the Court grants her leave to amend her complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)). If Plaintiff chooses to amend her pleading, she should be aware of the following standards for individual liability under 42 U.S.C. § 1983, as set forth below.

///

### 1.    *Eighth Amendment Standard*

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment claim, a plaintiff must satisfy both an objective and subjective component. *Hallett v. Morgan*, 296, F.3d 732, 744 (9th Cir. 2002). First, the plaintiff must plead facts sufficient to show she was subjected to an objectively serious deprivation of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. The "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of the inquiry. *Johnson*, 217 F.3d at 731. Second, Plaintiff must allege sufficient facts to show each official acted with "deliberate indifference" to her health or safety. *Farmer*, 511 U.S. at 834. To do so, Plaintiff must demonstrate that the official displayed a subjective indifference "to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### 2.    *Equal Protection Standard*

To the extent Moore alleges Defendants violated her rights under the Fourteenth Amendment, the Court construes this as an attempt to raise an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment requires states treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state such a claim, a plaintiff must allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994). In short, a plaintiff must demonstrate that (1) she is a member of a

3:25-cv-2980-AJB-BLM

protected class and (2) that the defendant acted with an intent or purpose to discriminate against her based upon her membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original).

## IV.   MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff has also filed a TRO Motion seeking an order "enjoining Defendants from forcing Plaintiff to double-cell, or use the restroom in front of others and to refrain from any acts of retaliation or harassment." (Doc. No. 4 at 6.) Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO. Such injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

Plaintiff's TRO motion, however, has been rendered moot because Plaintiff's Complaint has been dismissed for the reasons discussed above. The Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(a)(1), (d)(2); *Zepeda v. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983). Therefore, the TRO motion must be denied.[7] *See Goggin v. Williams*, No. 25-cv-01873-RBM-DEB, 2025 WL 3034073, at *4 (S.D. Cal. Oct. 30, 2025) (denying pro se plaintiff's TRO as moot where his complaint failed to state a claim and required sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)); *Youssef v. Youssef*, No. 22-cv-1260-RBM-AGS, 2022 WL 5287776, at *3 (S.D. Cal. Oct. 6, 2022) ("Since there is no basis for federal jurisdiction, it would be improper to consider the merits of Plaintiff's motion for restraining

---

[7]     In addition, to obtain a TRO or a preliminary injunction, a plaintiff "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013). And here, because Plaintiff's Complaint is subject to dismissal, she has necessarily failed to show a likelihood of success on the merits of her claims, or even a "serious question" as to her claims, to justify preliminary injunctive relief. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.") (cleaned up).

3:25-cv-2980-AJB-BLM

order."); *Olajide v. Brown*, No. 18-cv-03991-CRB, 2018 WL 3328227, at *3 (N.D. Cal. July 6, 2018) (dismissing the complaint and denying the TRO motion as moot).

Therefore, the Court **DENIES** the TRO Motion without prejudice as moot.

## V.    CONCLUSION AND ORDER

Accordingly, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 3).

2.    **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $49.16 initial filing fee assessed, if those funds are available at the time this Order is executed, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). All payments must be clearly identified by the name and number assigned to this action.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on the Secretary of the CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.    **DISMISSES** Plaintiff's Complaint in its entirety without prejudice for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5.    **DENIES** Plaintiff's Motion for Temporary Restraining Order (Doc. No. 4) without prejudice as moot.

6.    **GRANTS** Plaintiff **sixty (60) days** leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to her original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

3:25-cv-2980-AJB-BLM

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix her complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  February 4, 2026

Hon. Anthony J. Battaglia
United States District Judge

3:25-cv-2980-AJB-BLM