UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MOORE,<br>CDCR #BD8941,<br><br>                              Plaintiff,<br><br>        vs.<br><br><br>JEFF MACOMBER, CDCR, DOES 1–10,<br>DR. SATO,<br><br>                              Defendants. | Case No.:  25-cv-2980-AJB-BLM<br><br>**ORDER:**<br><br>**(1) DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b); and**<br><br>**(2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (Doc. No. 8)** |

### I.      INTRODUCTION

Plaintiff Joseph Moore ("Plaintiff" or "Moore") is a prisoner proceeding *pro se* with a civil rights action. On February 4, 2026, the Court granted Moore's application to proceed in forma paupers ("IFP"), dismissed the original complaint without prejudice, and denied her[1] motion for a temporary restraining order ("TRO"). (*See* Doc. No. 6.) The Court also granted Moore leave to file an amended complaint. (*Id.*)

---

[1]     Because Plaintiff identifies as a transgender woman the Court will refer to Plaintiff with female pronouns in this Order. *See, e.g., Schwenk v. Hartford*, 204 F.3d 1187, 1192 n.1 (9th Cir. 2000).

25-cv-2980-AJB-BLM

On February 13, 2026, Plaintiff filed a First Amended Complaint ("FAC") and another TRO motion. (*See* Doc. Nos. 7; 8.) As she did in her original complaint, in her FAC, Moore alleges violations of her rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (Doc. No. 7 at 8–11.) She also raises Eighth and Fourteenth Amendments claims pursuant 42 U.S.C. § 1983. (*Id*. at 3–7.) In her TRO motion, Moore again seeks an injunction preventing Defendants from assigning her a cellmate and requiring Defendants to permanently classify her for a single cell. (*See* Doc. No. 8.) For the reasons discussed below, the Court dismisses the FAC without prejudice for failure to state a claim and denies the TRO without prejudice as moot.

## II.     SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A.     Legal Standard

Because Moore is a prisoner proceeding IFP on a civil rights complaint against government defendants, the Court must screen the FAC and is required to sua sponte dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641–42 (9th Cir. 2018). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

///

25-cv-2980-AJB-BLM

**B.**     **Plaintiff's Allegations**

Moore states she is a transgender inmate confined at R.J. Donovan Correctional Facility ("RJD"). (Doc. No. 7 at 3.) She alleges "Macomber, [the Secretary of the California Department of Corrections and Rehabilitation ("CDCR")], Dr. Sato, and Does 1–10 knew [she] faced substantial risk of psychological and physical harm, and knew the classification of double-celling under CDCR's egregious housing policy exacerbated her 'gender dysphoria." (*Id.*) Moore states she informed "each Defendant" that if she was forced into a double cell she would have to disrobe and use the toilet in front of a cellmate, which would be "humiliating and psychologically harmful" to her. (*Id.*)

While Moore states she has been improperly classified for "double cell" housing, she does not allege she has been assigned a cellmate. Rather, she states Defendants have attempted to "force [her] into double-cell housing," but does not elaborate on the specific circumstances of these attempts, nor does she not state when they occurred.[2] (*Id.*) Moore alleges, however, that Defendants' failure to classify her for a single cell causes her emotional distress and makes her fear for her physical safety. (*Id.* at 3, 10.)

Moore also states that she told Dr. Sato, a psychologist, that she needed single cell classification and housing due to her vulnerabilities but "he failed to act to protect her." (*Id.* at 4.) Specifically, Dr. Sato failed to recommend that Moore be classified for single cell status despite Dr. Sato recommending other inmates with mental health conditions be classified for a single cell. (*Id.* at 4, 7.) Moore also sent a letter to Macomber, "requesting he protect Moore yet [Macomber] refused even though he knew [of] the heightened risks and Moore's single cell pleas." (*Id.* at 4.)

**C.**     **Discussion**

Moore names as defendants: the CDCR itself and Jeff Macomber (Secretary of the

---

[2]     Moore indicates her rights were violated on October 21, 2025, February 2, 2016 and "2017 – ongoing," (*see* Doc. No. 7 at 1), but does not elaborate on what occurred on these dates in the body of her FAC.

3

CDCR), Sato, and Does 1–10 in their individual and official capacities. (Doc. No. 7 at 2.) Moore alleges Defendants violated her rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (*Id.* at 8–11.) She also alleges violations of the Eighth Amendment and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (*Id.* at 3–7.) Plaintiff seeks money damages and an injunction preventing Defendants "from enforcing their egregious housing placement policy" and requiring Defendants grant her "permanent single cell status." (*Id.* at 13.)

### 1.   *ADA and RA*

Plaintiff alleges Defendants[3] violated her rights under the ADA and RA. (Doc. No. 7 at 8–11.) As discussed in this Court's previous order, to state a claim under Title II of the ADA, a plaintiff must allege: "(1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) [s]he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [her] disability." *Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotations omitted).

To state a claim under Section 504 of RA, a plaintiff must allege she was: (1) an individual with a disability; (2) otherwise qualified to receive the benefit; (3) denied the

---

[3]   The proper defendant to a Title II ADA claim is the public entity responsible for the alleged discrimination. *United States v. Georgia*, 546 U.S. 151, 153 (2006). As such, the CDCR is a proper Defendant here. Moreover, a suit against a state official in his or her official capacity is also, in effect, a suit against the government entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff sues Macomber, Sato, and Does 1–10 in their official capacities, her ADA and RA claims against them are not improper; however, they are redundant and as such may be subject to dismissal. *See Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (when plaintiff names both an officer in his official capacity and the government entity, "the court may dismiss the officer as a redundant defendant"); *see also Hofschneider v. City of Vancouver*, 182 F. Supp. 3d 1145, 1150 (W.D. Wash. 2016) (dismissing ADA and RA claims against individual defendants in their official capacities as redundant because the ADA and RA claims already were asserted against the City and School District).

25-cv-2980-AJB-BLM

benefits of the program solely by reason of her disability; and (4) the program receives federal financial assistance. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Because of the similarities between the laws and remedies available, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504 of the RA. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

In dismissing Plaintiff's original complaint, the Court assumed gender dysmorphia[4] to be a qualifying disability but found Moore failed to state a claim under the ADA or RA because she failed to allege facts showing Defendants denied her a single cell classification "by reason of [her]" gender dysmorphia. *See Guinn*, 502 F.3d at 1060 (emphasis added).

In her FAC, Moore again fails to plausibly allege she has been denied a single cell classification "by reason of her disability." Moore states that "CDCR has denied her safe housing and subjected her to discrimination solely based on her disability." (Doc. No. 7 at 8.) She also states "Defendants . . . violated the ADA by failing to accommodate [her] disability of gender dysphoria by appropriately housing her due to serious medical needs and discriminated against her due to her disability." (*Id.*) But Moore provides no specific facts to support these conclusory statements. Such allegations lacking in factual support constitute an improper "formulaic recitation" of an essential element required to state a

---

[4] The statutory definition of disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(A). But, pursuant to § 12211, "the term 'disability' shall not include . . . transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders[.]'" 42 U.S.C. § 12211(b)(1). While this Court is unaware of any controlling law in the Ninth Circuit on whether gender dysmorphia is a qualifying disability, other federal courts have presumed so. *See, e.g., Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022) (holding that the plaintiff "has plausibly alleged that gender dysphoria does not fall within the ADA's exclusion for 'gender identity disorders not resulting from physical impairments.' "); *see also Doe v. Georgia Dep't of Corr.*, 730 F. Supp. 3d 1327, 1348 (N.D. Ga. 2024) ("The ADA does not exclude gender dysphoria from its protection."); *Doe v. Horne*, No. 23-cv-00185-TUC-JGZ, 2024 WL 3091984, at *4 (D. Ariz. June 21, 2024) (finding that gender dysphoria qualifies as a disability under the ADA and RA); .

25-cv-2980-AJB-BLM

claim under the ADA and RA. *See Iqbal*, 556 U.S. at 681 (2009) (stating "formulaic recitations" of elements of cause of action are insufficient.); *see also Ritter v. Hunt*, No. 24-CV-087-H-DLC, 2025 WL 1194016, at *2 (D. Mont. Apr. 24, 2025) ("[Plaintiff] does not allege any facts that, if true, would establish that any defendant discriminated against him on the basis of his disability."); *Olson v. Carter*, No. 2:21-CV-00929-JAM-CKD-PS, 2021 WL 3115126, at *7 (E.D. Cal. July 22, 2021) (dismissing ADA and RA claims as conclusory where " the complaint does not contain any additional supporting facts" to show the plaintiff was denied benefits "because of [their] disability"); *Turner v. Ralkey*, No. 3:20-CV-5472-TL-DWC, 2022 WL 18460747, at *18 (W.D. Wash. Apr. 26, 2022) (dismissing ADA and RA claims when transgender Plaintiff failed to meet her burden to establish defendants' decisions regarding her housing were "by reason of" her gender dysphoria). Thus, Moore has failed to plausibly allege discrimination "by reason of her disability." *See Guinn*, 502 F.3d at 1060.

Accordingly, the Court **DISMISSES** Plaintiff's ADA and RA claims without prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 2. *42 U.S.C. § 1983*

In her FAC, Moore also brings claims pursuant to 42 U.S.C. § 1983. (Doc. No. 7 at 3–7.) Moore alleges Defendants Macomber, Sato and Does 1–10 violated her Eighth Amendment and Fourteenth Amendment rights in their individual capacities. (*Id.* at 5, 7.)

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

#### a. Does 1–10

As an initial matter, the Court finds Moore has failed to state a claim against any Doe Defendant. As discussed in this Court's previous order, while the use of fictitiously named "Doe" defendants is generally not favored, *Gillespie v. Civiletti*, 629 F.2d 637, 642

25-cv-2980-AJB-BLM

(9th Cir. 1980), amendment is allowed to substitute true names for fictitiously named defendants, *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989). Here, however, Moore has again failed to make any specific allegations against any individually identified Doe Defendant; instead she references "Does 1–10" only collectively. (*See* Doc. No. 7 at 3–6.) If Plaintiff wants to state claims against unknown defendants, she must identify them individually (i.e. Doe 1, Doe 2, etc.) *and* specify what each separately identified unknown individual did. She "must allege sufficient facts to show how each doe defendant individually violated [her] constitutional rights. If [s]he does so, [s]he may be given leave to obtain the names of doe defendants during discovery and seek leave to amend to name those defendants." *Finefeuiaki v. Maui Police Dep't*, No. 18-CV-00325-JAO-KSC, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)).

Therefore, Plaintiff's § 1983 claims against "Does 1–10" are dismissed without prejudice for failure to state a claim against any individual Doe Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

b.    Eighth Amendment

Next, Moore fails to state an Eighth Amendment failure-to-protect claim against Defendants Macomber and Sato. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates" and protect them from "violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citation omitted). To state a failure-to-protect claim, a plaintiff must plausibly allege (1) she was subjected to conditions posing a substantial risk of serious harm to her safety; and (2) defendants were deliberately indifferent to those risks. *Id*. at 837.

As to the first component, Moore fails to sufficiently allege her "double cell" classification amounts to a substantial risk of serious harm to her safety. A "mere suspicion that an attack will occur" is not enough to support a cognizable Eighth Amendment claim. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). And here, while Moore has been

25-cv-2980-AJB-BLM

classified for a "double cell," and she vaguely states that Defendants "attempted to force her [to] double-cell," she has not alleged she was ever given a cellmate. (*See* Doc. No. 7 at 3.) Nor has she alleged sufficient facts to show the mere possibility she may be assigned an unspecified cellmate in the future amounts to a threat to her safety. "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm." *Williams v. Wood*, 223 Fed. App'x. 670, 671 (9th Cir. 2007) (concluding the district court properly dismissed failure-to-protect claim because the plaintiff "did not allege that he has been assaulted or threatened with an assault by other prisoners . . . and his speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future health"); *see also Torres v. Avalos*, No. 22-CV-00053-FWS-AGR, 2024 WL 3008864, at *3 (C.D. Cal. Mar. 19, 2024) ("It is not enough that Plaintiff feared assault.").

Second, Moore has also failed to allege sufficient facts to show Macomber and Sato acted with "deliberate indifference" to her health or safety. *Farmer*, 511 U.S. at 834. To show deliberate indifference, a plaintiff must demonstrate that the official displayed a subjective indifference "to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, while Moore states she informed Macomber and Sato that she feared for her safety as a transgender inmate if she were to be given a cellmate, she does not allege sufficient facts to show Macomber or Sato subjectively "drew th[e] inference" that a "substantial risk of serious harm" to Moore's existed. *See id.* And because Moore does not allege she has been *given* a cellmate and states no facts regarding any specific or particularized threat, she has not plausibly alleged Macomber and Sato were deliberately indifferent to her safety. *See Berg*, 794 F.2d at 459 ("The deliberate indifference standard 'does not require that the guard or official believe to a moral certainty that one inmate

25-cv-2980-AJB-BLM

intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.'"); *Elias v. Griffin*, No. 2:23-CV-02940-MWF-JC, 2024 WL 4406823, at *7 (C.D. Cal. June 18, 2024) (finding transgender Plaintiff who failed to allege she was ever given a cellmate had not shown any Defendant actually and proximately caused a deprivation or injury and thus failed to state an Eighth Amendment claim).

The Court therefore **DISMISSES** Moore's Eighth Amendment claims against all Defendants for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

         c.     Equal Protection

Finally, Moore alleges Defendants Macomber and Sato violated her Fourteenth Amendment right to equal protection by failing to ensure she was classified for a single cell. (Doc. No. 7 at 6–7.) To state an equal protection claim, a plaintiff generally must "show that the defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) ("We have held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent."). The Ninth Circuit has held that gender identity is at least a "quasi-suspect class." *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019). Thus, discrimination on the basis of transgender status is subject to intermediate scrutiny. *See id.* at 1201; *see also Harrison v. Kernan*, 971 F.3d 1069, 1080 (9th Cir. 2020) (adopting intermediate scrutiny to gender-based equal protection claims arising in prison).

Here, however, Moore has failed to allege discriminatory intent. First, to the extent Moore alleges cisgender female inmates with mental health issues are given single cells, while she has been denied one, this is insufficient show discriminatory intent. That

25-cv-2980-AJB-BLM

cisgender female inmates, incarcerated at other prisons,[5] with unspecified mental health issues, may receive a single cell classification, this generalization is insufficient to show Moore and such cisgender inmates "similarly situated."

Moreover, Moore has failed to allege any facts showing Defendants are responsible for her classification status, much less were motivated by discriminatory intent. Plaintiff has submitted no evidence demonstrating any discriminatory motive underlying her double cell classification on the part of Macomber or Sato. She merely states Macomber and Sato are aware that she is transgender and does not want a cellmate due to her fear, anxiety and need for privacy. Moore then speculates that the failure to provide her a single cell classification suggests they are discriminating against her based on her gender identity. But this is insufficient to show discriminatory motive. *See Groux v. California Prison Indus. Auth.*, No. 2:23-CV-2831-CSK P, 2025 WL 1248797, at *9 (E.D. Cal. Apr. 30, 2025) ("Plaintiff speculates that actions were taken based on plaintiff's transgender identity, but plaintiff sets forth no facts evidencing discriminatory intent on the part of a particular defendant."); *Harris v. Holguin*, No. 18-CV-10382-DMG-DFM, 2019 WL 7987683, at *4 (C.D. Cal. Feb. 27, 2019) ("Plaintiff fails to allege facts showing that either defendant was motivated by her gender or transgender status, or that she was treated differently from other inmates due to her gender or identity as a transgender woman). Moore's conclusory allegations about the Defendants' motives are insufficient to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while "detailed factual allegations" are not required, stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Finally, Moore appears to suggest the "fail[ure] to comply with SB 132" shows discriminatory intent. California Senate Bill 132 was codified in Cal. Penal Code § 2606 and states, in relevant part:

---

[5] RJD, where Moore is incarcerated, houses transgender inmates but does not house cisgender female inmates.

25-cv-2980-AJB-BLM

(a) An individual incarcerated by the Department of Corrections and Rehabilitation who is transgender, nonbinary, or intersex, regardless of anatomy, shall:

. . . .

(3) Have their perception of health and safety given serious consideration in any bed assignment, placement, or programming decision within the facility in which they are housed pursuant to paragraph (3) of subdivision (a) or subdivision (b), including, but not limited to, granting single-cell status, housing the individual with another incarcerated person of their choice, or removing the individual or individuals who pose a threat from any location where they may have access to the individual who has expressed a safety concern.

Cal. Penal Code § 2606. This section, however, does not require transgender inmates receive a single cell classification; rather it directs the CDCR to take an inmate's gender identity into "serious consideration" when classifying them. *Id.* And while one of the options referenced is a single cell assignment, other options include assigning the inmate a cellmate of their choice or simply removing any threat to safety posed by specific inmates who may pose a threat. Thus, it is not clear Defendants failed to comply with California Penal Code § 2606[6] and as such it is insufficient to show discriminatory intent.

Therefore, the Court **DISMISSES** Plaintiff's equal protection claim for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

**D.    Leave to Amend**

Given Plaintiff's pro se status, the Court grants her one final opportunity to amend her complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district

---

[6]    To the extent that Plaintiff alleges a violation of California Senate Bill 132, the Court notes that a violation of state law or CDCR rules and policies alone is not sufficient to state a claim for relief under Section 1983. *See Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law."); *see also Elias v. Griffin*, 2024 WL 4406823, at *9 (C.D. Cal. June 18, 2024) (stating an alleged violation of the "penal code sections that codified California Senate Bill 132" alone is insufficient to § 1983 claim).

25-cv-2980-AJB-BLM

court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV.    MOTION FOR TEMPORARY RESTRAINING ORDER

Along with her FAC, Plaintiff filed a second TRO motion in which she seeks an order directing Defendants to "cease all attempts to double-cell Plaintiff.[7] (Doc. No. 8 at 8.) Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO. Such injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

As with Plaintiff's previous TRO motion, her current Motion for TRO has been rendered moot because Plaintiff's FAC has been dismissed for the reasons discussed above. The Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over any Defendant at this time.[8] *See* Fed. R. Civ. P. 65(a)(1), (d)(2); *Zepeda v. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983); *see also Goggin v. Williams*, 2025 WL 3034073, at *4 (S.D. Cal. Oct. 30, 2025) (denying pro se plaintiff's TRO as moot where his complaint failed to state a claim and required *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)); *Youssef v. Youssef*, 2022 WL 5287776, at *3 (S.D. Cal. Oct. 6, 2022) ("Since there is no basis for federal jurisdiction, it would be improper to consider the merits of Plaintiff's motion for restraining order."); *Olajide v. Brown*, 2018 WL 3328227, at *3

---

[7]    The Court again notes that the FAC lacks any specific allegation regarding any attempts by any Defendant to assign her a cellmate. (*See* Doc. No. 7.)

[8]    In addition, to obtain a TRO or a preliminary injunction, a plaintiff "must establish that [she] is likely to succeed on the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013). And here, because Plaintiff's FAC fails to state a claim, she has necessarily failed to show a likelihood of success on the merits of her claims, or even a "serious question" as to her claims, to justify preliminary injunctive relief. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.") (cleaned up).

(N.D. Cal. July 6, 2018) (dismissing the complaint and denying the TRO motion as moot). Therefore, the Court **DENIES** the TRO Motion (Doc. No. 8) without prejudice as moot.

## V. CONCLUSION AND ORDER

Accordingly, the Court:

1. **DISMISSES** Plaintiff's First Amended Complaint in its entirety without prejudice for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

2. **DENIES** Plaintiff's Motion for Temporary Restraining Order (Doc. No. 8) without prejudice as moot.

3. **GRANTS** Plaintiff **sixty (60) days** leave from the date of this Order in which to file a Second Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Second Amended Complaint must be complete by itself without reference to her original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a Second Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix her complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: March 26, 2026

Hon. Anthony J. Battaglia
United States District Judge

25-cv-2980-AJB-BLM